**ROSES INCORPORATED, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 81–7–00857.**

United States Court of
International Trade.

April 28, 1982.

Eugene L. Stewart, Washington, D. C. (Eugene L. Stewart and Paul Jameson, Washington, D. C., on the briefs), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Commercial Litigation Branch, New York

City (Sheila N. Ziff, New York City, on the brief), for defendant.

RAO, Judge:

This case involves an antidumping petition submitted to the Department of Commerce International Trade Administration (hereinafter ITA) by plaintiff, an association of domestic rose growers, alleging that fresh cut roses from Colombia are being sold in the United States at less than fair value, thereby injuring a domestic industry. The petition, filed on June 4, 1981, pursuant to section 732(b)(1) of the Tariff Act of of 1930, as amended by the Trade Agreements Act of 1979, 19 U.S.C. § 1673a(b)(1) (hereinafter the Act), was accompanied by a confidential study of the rose growing industry in Colombia and also cited data from the U. S. Department of Commerce, Bureau of the Census to support the allegations of the petition.

The ITA then had 20 days after the date of the filing of the petition to determine whether the petition alleged the elements necessary for the imposition of a duty under section 731 of the Tariff Act of 1930, as amended, and contained information reasonably available to the petitioner supporting the allegations. During this 20-day period the ITA notified plaintiff's attorney, telephonically and by letter, that the petition was defective, suggested that plaintiff supplement the petition to correct the omissions and stated that otherwise the petition would be dismissed. The plaintiff filed additional data on June 19, 1981.

In the interim, the Asociacion Colombiana De Exportadores De Flores (Asocolflores), an association of Colombian rose growers, learned of the filing of the petition, retained counsel and advised the Department of Commerce (Commerce) that it was seeking disclosure of plaintiff's confidential study under the Freedom of Information Act, as amended (5 U.S.C. § 552). Additionally, Commerce received letters from the Colombian Government through the Colombian Embassy in Washington, D. C. and from Asocolflores which contained data different from that submitted by plaintiff,

particularly that only 18 workers per hectare of roses were employed in rose growing in Colombia rather than 30, as alleged by plaintiff, and that the bloom rate per rose bush was 1.8 per month rather than 1.29, as alleged by plaintiff. On June 22, 1981 the ITA held an *ex parte* meeting with the Economic Minister of the Colombian Embassy, counsel for Asocolflores and others, at which the petition and its alleged insufficiencies were discussed. Whether plaintiff was advised of this meeting by the ITA and elected not to attend cannot be ascertained from the administrative record. There is also a record of a telex from the Fund for the Promotion of Exports (Proexpo) an official agency of the Colombian Government, to the ITA concerning the petition, but it is the ITA's position that the telex was rejected and returned (and for this reason not included in the administrative record). The contents of this telex are not known.

On June 24, 1981 counsel for plaintiff was notified by the ITA to either withdraw the petition by the next day or it would be dismissed. Plaintiff was also informed that it could submit another petition if it chose to do so. Plaintiff did not withdraw its petition and on June 25, 1981 the ITA notified plaintiff that it was dismissed, with proper notice of the dismissal being published in the Federal Register on June 30, 1981 [46 Fed.Reg. 33575 (1981)].

Plaintiff filed the present action on July 13, 1981 contesting the propriety of the ITA's decision to dismiss the petition, thereby terminating the antidumping proceeding. It seeks a determination that the ITA's decision to dismiss the petition was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law in that the ITA exceeded its statutory authority in going beyond the petition and supporting data in determining that there was no dumping of roses from Colombia, and that it solicited, accepted and considered information from the Colombian rose growers and from the Colombian Government.

It is the ITA's position that the petition, together with the supporting data submitted by plaintiff, on its face, does not warrant an investigation. It determined that the confidential study supporting the petition contains conflicting data, particularly with reference to the United States selling price and that, taking the figures established by plaintiff, it can be determined that roses from Colombia were not being sold at less than fair value during the time alleged in the petition.

The congressional scheme for the imposition of antidumping duties to deter the unfair competition of foreign merchandise with that manufactured in the United States encompasses several stages which are easily differentiated and the responsibility for which devolves to various agencies.

■ At the preinvestigatory stage, the interested party which is seeking relief for a domestic industry files a petition and supporting data with the administrating authority. If the domestic industry or interested party files a petition with the administrating authority which alleges the elements necessary for the imposition of dumping duties, and which is accompanied by data reasonably available to the petitioner supporting the allegations in the petition, an antidumping proceeding must be *commenced* by virtue of section 732 of the Act,[1] which uses the mandatory "shall" rather than the discretionary "may."

The legislative history of the Act makes it clear that petitions which allege the elements required by the statute and are supported by data reasonably available to the petitioner should be acted upon and not dismissed. The Senate Finance Committee Report on the Act, S.Rep. 96–249, 96th Cong., 1st Sess. (1979), at 63, U.S.Code Cong. & Admin.News 1979, pp. 381, 449 states:

The committee intends section 732(c)(1) to result in investigations being commenced unless the authority is convinced that the petition and supporting information fail to state a claim upon which relief can be granted under section 731 or the petitioner does not provide information supporting the allegations which is reasonably available to him.

The House Report of the Committee on Ways and Means, H.Rep.No. 96–317, 96th Cong. 1st Sess. (1979) at 60 is also helpful in determining what Congress intended petitioners must allege to satisfy the requirements of the Act:

The petition must allege (1) that imports are being or are likely to be sold in the United States at less than fair value and (2) that a domestic industry is being or is likely to be materially injured or the establishment of which is being retarded by reason of such imports; and the petition must be accompanied by information supporting those allegations which is reasonably available to the petitioner.

The Committee has long been concerned that petition requirements not be so onerous as to preclude petitioners presenting meritorious complaints from obtaining the remedy provided by the law. The Committee therefore intends that no petitioner shall be required to provide information not reasonably available to him. An evaluation of what information is reasonably available will be made on the basis of the resources of the individual petitioner. The petitioner will be expected to use reasonable efforts to collect information from public and industry sources.

And, finally, the following colloquy between Senators Danforth and Ribicoff during the floor debates on the Act [125 Cong. Rec. S10318 (daily ed. July 23, 1979)] provides additional guidance for the standard to be applied in determining whether a petition is legally sufficient:

---

1. Section 732. Procedures for initiating an antidumping duty investigation.

(a) Initiation by administering authority.— An antidumping duty investigation shall be commenced whenever the administering au-

thority determines, from information available to it, that a formal investigation is warranted into the question of whether the elements necessary for the imposition of a duty under section 731 exist.

Mr. Danforth. Should not the administering authority, like the courts, look only to the four corners of the petition—the pleading—and the information filed supporting the allegations and not elsewhere?

Mr. Ribicoff. Definitely yes.

Mr. Danforth. Since at this stage, it is not the intent of Congress to have ongoing an advocacy proceeding, petitions or information seeking to rebut the allegations should not be considered by the administering authority, is this not correct?

Mr. Ribicoff. That is correct. This is not to say, however, that the administering authority, like a court, may not take "judicial notice" of facts within the public domain.

Mr. Danforth. How much supporting information should be required of the petition?

Mr. Ribicoff. It is the intent of this legislation that the determination as to the information reasonably available to any petitioner be made in light of the circumstances of each petitioner.

Mr. Danforth. Should the "reasonably available" information requirement be the basis for the administering authority refusing to proceed with an investigation?

Mr. Ribicoff. No.

■ It is thus clear that Congress intended to alleviate the burden of petitioners in initiating antidumping proceedings, and to limit the information considered by the administering authority to that included in the petition and supporting data submitted by the petitioner and facts "within the public domain." In this case, the ITA erred in soliciting or receiving information from the Colombians during the pendency of this petition in the 20-day preinvestigatory period, even though it now claims that this information was not considered in making the determination to dismiss the petition, and in holding an *ex parte* conference with the attorney for the Colombian rose producers' association and the Colombian Embassy staff members, among others.

■ Nor was it proper for the ITA to conclude that the data submitted by the plaintiff, contained in U. S. Department of Commerce, Bureau of the Census Report IM 145X, should be disregarded because it contained information that had previously proved to be unreliable in other cases. Unless the unreliability of the specific information utilized by the petitioner is within common knowledge, so that the defendant can be said to be justified in taking what amounts to judicial knowledge of that fact, it should not be discredited merely because the same study contains data which proved erroneous as to other merchandise.

■ Another instance of error on the part of the ITA was the requirement that the plaintiff furnish data on the United States selling price in the petition. That information is not required to be alleged by section 732 of the Act and while it may be beneficial to the ITA to have such information, it pertains more to the investigatory stage of an antidumping proceeding than to the preinvestigatory stage, where only the sufficiency of the petition and the supporting data is to be determined.

The perusal by this court of the petition, its supplement filed by the plaintiff pursuant to the request of the ITA and the supporting information provided by the plaintiff lead to the conclusion that the allegations they contain satisfy the requirements of the statute. In paragraph 7 of the petition plaintiff alleges that roses from Colombia are being sold at less than fair value in the United States. In paragraph 8 a sufficient allegation of material injury to the United States rose growing industry is made. The supporting information cited by plaintiff by way of both public study and private industry survey tends to support these allegations. This court need not consider the merits of the allegations of the petition nor the validity of the supporting data to decide the question before it.

For the foregoing reasons and despite the presumption of regularity to which the decisions of the ITA are entitled, this court concludes that the ITA did not render its

decision to dismiss the petition herein in accordance with law. Plaintiff's motion is therefore granted and it is ordered that the petition be reinstated and that the investigation be commenced, with an opportunity for the plaintiff to present all of its documentation as to sales in the United States at less than fair value and injury to the United States rose growing industry resulting from those sales.